

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| STEVE GARZA, | ) | No. CV 14-4425-PLA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| CAROLYN W. COLVIN, ACTING | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**I.**

**PROCEEDINGS**

Plaintiff, in pro se, filed this action on June 13, 2014, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB").  The parties filed Consents to proceed before the undersigned Magistrate Judge on July 9, 2014, and July 16, 2014.  On February 2, 2015, plaintiff filed his Motion for Summary Judgment ("MSJ").  On March 5, 2015, defendant filed her Cross-Motion for Summary Judgment ("Cross-MSJ").  As of the date of this Memorandum Opinion and Order, plaintiff has not filed an opposition to the Cross-MSJ. The Court has taken the matter under submission without oral argument.

/

## II.

## BACKGROUND

Plaintiff was born on August 1, 1961.  [Administrative Record ("AR") at 106.]  He has past relevant work experience as an account representative and an insurance agent.  [AR at 23, 44.]

On June 8, 2011, plaintiff filed an application for a period of disability and DIB, alleging that he has been unable to work since June 3, 2010.  [AR at 15, 106-09.]  After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ").  [AR at 15, 73.]  A hearing was held on November 16, 2012, at which time plaintiff appeared represented by an attorney, and testified on his own behalf.  [AR at 31-46.]  A vocational expert ("VE") also testified.  [AR at 43-46.]  On January 9, 2013, the ALJ issued a decision concluding that plaintiff was not under a disability from June 3, 2010, the alleged onset date, through January 9, 2013, the date of the decision.  [AR at 15-24.]  Plaintiff requested review of the ALJ's decision by the Appeals Council.  [AR at 10.]  When the Appeals Council denied plaintiff's request for review on April 18, 2014 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner.  See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted).  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)

(same).  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the

1  claimant has a "severe" impairment or combination of impairments significantly limiting his ability

2  to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.

3  If the claimant has a "severe" impairment or combination of impairments, the third step requires

4  the Commissioner to determine whether the impairment or combination of impairments meets or

5  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404,

6  subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If

7  the claimant's impairment or combination of impairments does not meet or equal an impairment

8  in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

9  sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled

10  and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform

11  past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie

12  case of disability is established. Id. The Commissioner then bears the burden of establishing

13  that the claimant is not disabled, because he can perform other substantial gainful work available

14  in the national economy. Id. The determination of this issue comprises the fifth and final step

15  in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin,

16  966 F.2d at 1257.

17

18  **B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

19         At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since

20  June 3, 2010, the alleged onset date.[1] [AR at 18.] At step two, the ALJ concluded that plaintiff

21  has the severe impairments of back disorder, right knee pain, and obesity. [Id.] He also

22  determined that plaintiff has the non-severe impairments of mental depression and substance

23  abuse in remission. [Id.] At step three, the ALJ determined that plaintiff does not have an

24  impairment or a combination of impairments that meets or medically equals any of the impairments

25  in the Listings. [AR at 21.] The ALJ further found that plaintiff retained the residual functional

26  ─────────────

27         [1]   The ALJ concluded that plaintiff met the insured status requirements of the Social
     Security Act through December 31, 2014. [AR at 18.]

28

4

1 | capacity ("RFC")[2] to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b),[3]

2 | and can lift and carry up to twenty pounds occasionally and ten pounds frequently; stand and walk

3 | up to six hours in an eight-hour day; and sit up to six hours in an eight-hour day.  [Id.]  At step four,

4 | based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to

5 | perform his past relevant work as an account representative (a sedentary-level occupation), and

6 | as an insurance agent (a light-level occupation), as actually and generally performed.  [AR at 23.]

7 | Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset

8 | date of June 3, 2010, through January 9, 2013, the date of the decision.  [AR at 24.]

9 |

10 | **V.**

11 | **THE ALJ'S DECISION**

12 | Plaintiff contends that the ALJ erred when he:  (1) accorded more weight to the non-treating

13 | medical examiner than to the opinions of plaintiff's treating sources; (2) discounted plaintiff's

14 | subjective symptom testimony; (3) found no severe mental health impairment; (4) failed to

15 | consider the side effects from plaintiff's prescription medications; and (5) failed to pose an

16 | accurate, complete hypothetical to the VE.  [MSJ at 2.]  Defendant contends that the ALJ properly

17 | resolved these issues.  [Cross-MSJ at 2-10.]

18 | As set forth below, the Court agrees with plaintiff, in part, agrees with defendant, in part,

19 |

20 | [2]   RFC is what a claimant can still do despite existing exertional and nonexertional

21 | limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which

22 | the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

23 |

24 | [3]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this

25 | category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a

26 | full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are

27 | additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

28 |

1 and remands for further proceedings.

2

3 **A.    TREATING PHYSICIAN**

4        Plaintiff contends that the ALJ erred when he gave more weight to the consulting medical

5 examiner Homayoun Saeid, M.D., than to plaintiff's treating physicians, Arnold Yuan, M.D., and

6 David R. Johnson, M.D. [MSJ at 6-8.]  He states that Dr. Saeid, who conducted his examination

7 of plaintiff on January 16, 2012, did not review any of the existing medical records and,

8 subsequent to his examination, another 200 pages of medical records were added to the file.

9 [MSJ at 6.]  He also contends that the ALJ "failed to even acknowledge or address the existence

10 of Dr. Yuan's opinion," and also "failed to provide any reasons whatsoever for his rejection of the

11 opinion of Dr. Johnson, who opined that [plaintiff] would be unable to return to work because of

12 his limited ability to sit, stand, or walk."  [MSJ at 7 (citations omitted).]  Finally, he argues that the

13 ALJ's statement that Dr. Saeid's assessment "most closely aligns with the overall medical record,"

14 fails to "address the existing opinions from [plaintiff's] treating physicians that contradicted Dr.

15 Saeid's opinion."  [MSJ at 7-8.]

16

17       **1.    Legal Standard**

18       "There are three types of medical opinions in social security cases:  those from treating

19 physicians, examining physicians, and non-examining physicians."  Valentine v. Comm'r Soc. Sec.

20 Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.  "As a

21 general rule, more weight should be given to the opinion of a treating source than to the opinion

22 of doctors who do not treat the claimant."  Lester, 81 F.3d at 830; Garrison v. Colvin, 759 F.3d

23 995, 1012 (9th Cir. 2014) (citing Ryan, 528 F.3d at 1198); Turner v. Comm'r of Soc. Sec., 613

24 F.3d 1217, 1222 (9th Cir. 2010).  "The opinion of an examining physician is, in turn, entitled to

25 greater weight than the opinion of a nonexamining physician."  Lester, 81 F.3d at 830; Ryan, 528

26 F.3d 1198.

27       "[T]he ALJ may only reject a treating or examining physician's uncontradicted medical

28

6

1    opinion based on clear and convincing reasons." Carmickle, 533 F.3d at 1164 (citation and

2    internal quotation marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

3    "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate

4    reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164

5    (citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim v. Colvin, 763

6    F.3d 1154, 1160-61 (9th Cir. 2014); Garrison, 759 F.3d at 1012. The ALJ can meet the requisite

7    specific and legitimate standard "by setting out a detailed and thorough summary of the facts and

8    conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157

9    F.3d at 725. The ALJ "must set forth his own interpretations and explain why they, rather than the

10   [treating or examining] doctors', are correct." Id.

12       **2.   Background**

13       On June 11, 2010, Dr. Yuan examined plaintiff a few days after he suffered a work-related

14   injury.[4] [AR at 375-78.] Dr. Yuan noted that plaintiff had diffuse tenderness and spasm over the

15   paraspinal muscles in the lumbosacral area, decreased range of motion, and positive straight leg

16   raising bilaterally. [AR at 375.] He diagnosed plaintiff with bilateral lumbosacral strain/sprain and

17   bilateral radiculopathy. [Id.] Dr. Yuan opined that plaintiff was able to return to work with

18   restrictions in that he should not lift/carry over ten pounds; push/pull over ten pounds; and bend,

19   twist or turn. [AR at 377.] Plaintiff received epidural injections, chiropractic treatment,

20   acupuncture, and physical therapy, in the following months. [AR at 189-282, 375, 387, 418.]

21       On May 4, 2011, plaintiff was seen by Alexandre Rasouli, M.D., a doctor at the Spine

22   Institute at Cedars-Sinai Medical Center. [AR at 410-16.] Dr. Rasouli noted that plaintiff had 5/5

23   motor strength in his bilateral upper and lower extremities; a slightly antalgic gait; and a negative

24   straight leg raising test. [AR at 411.] X-rays showed advanced spondylosis at L4-L5 and L5-S1

25   with intervertebral disc height collapse, bilateral facet arthropathy at both levels, and anterior

27       [4]   On June 3, 2010, plaintiff experienced sharp pain in his lower back and legs while lifting an
     approximately thirty pound computer case into his car. [AR at 368, 375, 387.]

osteophytosis. [Id.] An MRI showed evidence of advanced degenerative disc collapse at L4-L5 and L5-S1 without evidence of neoplasm, lesion, or fracture. [Id.] At a May 25, 2011, follow-up visit subsequent to a CT scan, Dr. Rasouli noted evidence of facet arthrosis as well as hook sign bilaterally of the anterior plate of the L5 vertebral body, but also found that the facet joints are preserved at L4-L5 despite the approximately 50% intervertebral disc height collapse. [AR at 413.] Plaintiff stated he wanted "to proceed with a permanent solution," to his back pain. [Id.] Dr. Rasouli recommended a fusion at L5-S1 and an artificial disc at L4-L5. [Id.]

Dennis Dasher, M.D., conducted a qualified medical evaluation ("QME") on May 11, 2011. [AR at 386-409.] Dr. Dasher found positive straight leg raising at 60 degrees on the left and 70 degrees on the right. [AR at 394.] He also noted limited flexion of the lumbosacral spine at 15 inches from the floor. [Id.]

On July 19, 2011, for purposes of a QME, plaintiff was evaluated by Dr. Johnson, a Board-Certified Orthopedic Surgeon and Qualified Medical Evaluator. [AR at 417-24.] Plaintiff complained of low back pain with intermittent sciatica, pain in the tail bone, and some radiating pain down the back of the legs. [AR at 419.] Dr. Johnson noted moderate lumbosacral tenderness, normal gait, a decreased range of motion of the lumbar spine, negative straight leg raising tests, and no sensory deficits in the lower extremities. [AR at 423.] Plaintiff reported that an MRI had shown disc space narrowing and disc protrusion, and that he was scheduled for surgery for a disc replacement at the L4-L5 level. [Id.]

On December 9, 2011, plaintiff had surgery, including spinal fusion at L5-S1 and disc replacement at L4-L5. [AR at 466.] On January 16, 2012, plaintiff was evaluated post-surgery by the consultative examiner, Board Eligible Internist, Dr. Saeid. [AR at 293-98.] Plaintiff still complained of lower back pain and right knee pain and reported that he had also undergone right knee surgery to repair a torn meniscus in summer 2011. [AR at 293-94.] Dr. Saeid's observations and test results, including review of a lumbar spine x-ray, showed that plaintiff was able to get into and out of his chair without difficulty; had tenderness in the midline and paraspinal areas of the mid- to lower-lumbar region of the back; negative straight leg raising bilaterally; a reduced range

8

1   of motion of the back; grossly normal range of motion of the hips bilaterally; tenderness in the

2   anterior and medial aspect of the right knee joint but no radiculopathy; and a left foot stance

3   preference but no antalgic gait. [AR at 294-98.]  Dr. Saeid concluded that plaintiff was capable

4   of lifting and carrying twenty pounds occasionally and ten pounds frequently; can stand or walk

5   for six hours of an eight-hour day; and can sit for six hours in an eight-hour day. [AR at 297.]

6         On July 17, 2012, plaintiff was again examined by Dr. Johnson. [AR at 464-72.]  Dr.

7   Johnson noted that plaintiff had back surgery on December 9, 2011, which included a fusion at

8   L5-S1 with L4-L5 disc replacement. [AR at 465, 466.]  Plaintiff still complained of daily pain in the

9   low back and base of the lower spine, and along the sciatic nerve. [AR at 466.]  Dr. Johnson

10  noted that plaintiff walked with a "shuffling type antalgic gait"; his squat was limited to 75%

11  because of his back problem; he had negative straight leg raising and sciatic stretch tests, and he

12  was able to flex his hips 100/100 degrees. [AR at 469.]  Dr. Johnson's diagnostic impressions

13  were persistent low back pain with intermittent lower extremity referral, and status post anterior

14  two-level surgery with lumbosacral fusion and L4-L5 joint replacement, without improvement. [AR

15  at 470.]  He determined that plaintiff "is unable to return to his previous type job" -- which he

16  described as requiring plaintiff "to drive long distances setting up displays and dealing with

17  insurance" -- but "if a new job is found for him," it would need to include "limited walking, sitting,

18  standing, and no heavy lifting." [AR at 471.]

19        With regard to the opinions of these physicians, the ALJ stated the following:

20      Shortly after the claimant's June 3, 2010 back injury, Dr. Yuan opined that the
    claimant should be limited to sedentary work.  However, subsequent physical
21  examinations from 2011 reveal that the claimant maintained significant ability even
    prior to his December 2011 back surgery.
22
    In May 2011, Dr. Rasouli noted that the claimant showed full motor strength in all
23  extremities.  The claimant's straight-leg-raising test was negative at that time.  Dr.
    Dasher also noted at that time that the claimant showed a full range of motion in all
24  extremities.  Dr. Johnson noted similar findings during the claimant's July 19, 201[1]
    Basic QME.  The claimant also showed a normal gait with normal heel to toe
25  progression.  The claimant was able to stand on his heels and toes.  His sciatic
    stretch tests were negative, and he showed no sensory deficits in the lower
26  extremities.

27  Medical records after the claimant's December 2011 surgery also reveal that the
    claimant's musculoskeletal conditions are not severe enough to preclude the
28

9

1   claimant from working.  On January 16, 2012, the claimant was able to get into and
    out of a chair without difficulty during his internal medicine consultative examination.
2   Although he had a left foot stance preference, he did not have an antalgic gait.  He
    also showed full strength and sensation in the lower extremities, and his straight-leg-
3   raising tests were negative bilaterally.

4   Dr. Johnson's July 17, 2012 QME documented similar findings.   Although the
    claimant reported that he used a cane 4-5 days per week, he did not bring that cane
5   to the evaluation.  The claimant was able to stand on his heels and toes.  He
    showed normal motor and sensory functions in the lower extremities.  His straight-
6   leg-raising and sciatic stretch tests continued to be negative.

7   After examining the claimant on January 16, 2012, internal medicine consultative
    examiner Dr. Saeid opined that the clamant is capable of a full range of light work.
8   . . .  Indeed, in July 2012, Dr. Johnson opined that the claimant had only a 25%
    Whole Person Impairment, and that the claimant could perform a job with "limited
9   walking, sitting, standing, and no heavy lifting."

10  [AR at 22-23 (citations omitted).]

11      In determining that plaintiff was capable of the full range of light work, the ALJ concluded

12  that "Dr. Saeid's assessment most closely aligns with the overall medical record, as well as the

13  claimant's slightly decreased range of motion of the right knee."  [AR at 23.]

14

15      **3.    Analysis**

16      Plaintiff contends that the ALJ erred in basing his RFC determination on the opinion of Dr.

17  Saeid, "when Dr. Saeid was neither a treating physician nor familiar with the other information in

18  . . . [plaintiff's] file."  [MSJ at 6.]  He also states that Dr. Saeid, who conducted his examination of

19  plaintiff on January 16, 2012, did not review any of the existing medical records and, subsequent

20  to Dr. Saeid's examination, another 200 pages of medical records were added to file.  [Id.]  Plaintiff

21  argues that the ALJ failed to "provide any reason whatsoever for his rejection of the opinions of

22  Dr. Yuan and Dr. Johnson," "failed to even acknowledge or address the existence of Dr. Yuan's

23  opinion," and "failed to provide any reasons whatsoever for his rejection of the opinion of Dr.

24  Johnson, who opined that [plaintiff] would be unable to return to work because of his limited ability

25  to sit, stand, or walk."   [MSJ at 7 (citing AR at 377, 471).]  Finally, plaintiff argues that the ALJ

26  relied on the opinions of Dr. Saeid "without actually addressing the existing opinions from

27  [plaintiff's] treating physicians that contradicted Dr. Saeid's opinion."  [MSJ at 7-8.]  Plaintiff's

28

1  arguments are not persuasive.

2      First, as the ALJ noted, Dr. Yuan's opinion that plaintiff should be limited to sedentary work[5]

3  was made shortly after the June 3, 2010, incident that injured plaintiff's back, and subsequent

4  examinations by treating and consulting physicians, both before and after plaintiff's back surgery,

5  found improved function.  Indeed, even on June 11, 2010 -- one week after plaintiff's accident --

6  Dr. Yuan opined that plaintiff could return to work effective June 11, 2010, through June 16, 2010,

7  with no lifting/carrying more than ten pounds, and no bending, twisting, or turning.  [AR at 377.]

8  Thus, contrary to plaintiff's contention, the ALJ considered -- and discounted -- Dr. Yuan's opinion

9  for legally valid reasons.

10      Next, in May 2011, Dr. Rasouli noted plaintiff had full motor strength in all extremities, and

11  a negative straight leg raising test result [AR at 411], Dr. Dasher found normal ranges of motion,

12  albeit positive straight leg raising test results [AR at 393], and in July 2011, Dr. Johnson found

13  moderate lumbosacral tenderness, normal gait, a decreased range of motion of the lumbar spine,

14  negative straight leg raising test results, and no sensory deficits in the lower extremities, although

15  he acknowledged plaintiff's upcoming disc replacement surgery.  [AR at 417-24.]  Neither Dr.

16  Rasouli, Dr. Dasher, nor Dr. Johnson suggested any functional limitations.

17      Additionally, the post-surgical examination by Dr. Saeid returned largely normal results and

18  led Dr. Saeid to conclude that plaintiff was capable of a full range of light work.  [AR at 295-97.]

19  And, although in July 2012, Dr. Johnson opined that plaintiff was "unable to return to his previous

20  type job," he also indicated that plaintiff could perform a job with "limited walking, sitting, standing,

21  and no heavy lifting."  [AR at 471.]  Dr. Johnson did not otherwise state what he meant by those

22  limitations.  He generally found that plaintiff was in "no acute distress," "uses his hands to push

23  himself to get up and down," is able to stand on his heels and toes, has mild low back pain "with

24  extremes of hip motion, particularly external rotation," and had negative straight leg raising and

25

26      [5]   As previously noted, the ALJ determined that plaintiff could still perform his past work as

27  an account representative -- a sedentary level position; thus, any error in the ALJ's consideration
   of Dr. Yuan's opinion was harmless.  [AR at 23.]

28

1   sciatic stretch tests.  [AR at 469.]  With regard to plaintiff's contention that Dr. Saeid failed to

2   review the records that were later added to the file [MSJ at 6], plaintiff fails to provide this Court

3   with any evidence that there is anything in the post-July 2012 medical records that is inconsistent

4   with Dr. Saeid's opinion, or with the ALJ's conclusion that plaintiff could perform light work.

5        Moreover, contrary to plaintiff's contention, the ALJ did not ignore Dr. Johnson's 2012

6   opinion -- in fact, the ALJ noted that the examination showed that plaintiff was able to stand on his

7   heels and toes, had normal motor and sensory functions in the lower extremities, and had normal

8   straight leg raising and sciatic stretch tests.  [AR at 22-23.]  The ALJ also *discounted* the February

9   3, 2012, opinion of the state agency consultant, Barbara Cochran, M.D., who opined that plaintiff

10  should be limited to less than the full range of light work, because her opinion was "inconsistent

11  with the treating records," specifically referring to Dr. Johnson's 2012 opinion "that [plaintiff] had

12  only a 25% Whole Person Impairment, and . . . could perform a job with 'limited walking, sitting,

13  standing, and no heavy lifting.'"  [AR at 23 (citations omitted).]  Accordingly, the ALJ implicitly

14  found that Dr. Johnson's 2012 opinion was consistent with an RFC for light work.  The ALJ also

15  observed that plaintiff's testimony that he lives alone, drives a car, walks to the grocery store and

16  pushes a grocery cart home with the groceries, and is able to safely lift up to fifteen pounds, is

17  consistent with a light RFC.  [AR at 23, 38; but see Discussion infra Part V.B.]

18       Based on the foregoing, the ALJ did not give improper weight to the opinion of Dr. Saeid,

19  or improperly reject or ignore the opinions of plaintiff's treating physicians.  Indeed, in finding that

20  plaintiff has severe back and right knee impairments, and was limited to a full range of light work,

21  the ALJ apparently accepted their findings as true.  Moreover, plaintiff's treating physicians did not

22  offer any concrete opinions about limitations on plaintiff's ability to sit, stand, walk, lift, or carry,

23  other than on a temporary basis, i.e., Dr. Yuan's limitation right after the incident to sedentary work

24  for five days.  [AR at 377.]  Nor do the medical records otherwise demonstrate that plaintiff is

25  physically unable to perform his past relevant work at the light or sedentary levels, and none of

26  the treating or consulting physicians opined that plaintiff is unable to perform light or sedentary

27  work or expressed an opinion that plaintiff is temporarily or permanently disabled.  See Matthews

28

1   v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (in upholding the ALJ's findings, the court noted that

2   "[n]one of the doctors who examined [claimant] expressed the opinion that he was totally disabled"

3   or implied that he was precluded from all work activity).  Thus, the weight given by the ALJ to the

4   January 2012, opinion of Dr. Saeid was not error because it was based on Dr. Saeid's

5   independent examination, and Dr. Saeid's findings were supported by the longitudinal evidence

6   from 2011 onward.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (the opinion of a

7   nontreating source based on independent clinical findings may itself be substantial evidence).  The

8   ALJ reasonably resolved any conflicts in the medical evidence and this Court must uphold the

9   Commissioner's interpretation even if the evidence can rationally be interpreted in more than one

10  way.  See, e.g., Aukland v. Massanari, 257 F.3d 1033, 1034-35 (9th Cir. 2001).

11       Even if the Court were to find that there was error -- which it does not -- that error was

12  harmless.  Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991) (harmless error rule applies to

13  review of administrative decisions regarding disability).  As noted, no doctor opined that plaintiff

14  was unable to perform at least sedentary work, and plaintiff's past work as an account

15  representative is normally performed in the national economy at the sedentary level of exertion.

16  [AR at 23, 44.]

17

18  **B.    CREDIBILITY**

19       Plaintiff testified that he has low back pain that radiates to the lower extremities and that

20  he experiences pain in the right knee.  [AR at 22; see also AR at 293.]  He also testified that

21  because of his pain he is only able to sit for fifteen minutes at a time, and then must get up and

22  walk around for ten to twenty minutes before sitting again; he can stand for no more than three

23  hours in an eight-hour day; he has difficulty with certain self-care tasks such as dressing and

24  bathing; and his friends assist him with household chores.  [AR at 22, 34-38, 42-43; see also AR

25  at 166-72.]

26       Here, the ALJ stated he "[did] not fully credit the testimony and allegations of [plaintiff]":

27       The objective medical evidence in this case is inconsistent with a disabling
         impairment.  The claimant has also admitted that he is capable of engaging in a

28

variety of daily activities.  The claimant is able to live alone.  He drives a car.  He can walk to the grocery store and push around a grocery cart.  Furthermore, he testified that he is able to lift approximately 15 pounds.  Such admissions support a light residual functional capacity.

[AR at 23.]

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony.  [MSJ at 8.]  Specifically, he claims that "the ALJ drastically downplay[ed] [plaintiff's] testimony and the medical evidence of record and focus[ed] on Dr. Saeid's opinion from a one-time examination to support a foregone conclusion."  [Id.]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis."  Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  Id.  at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if the claimant meets the first test, the ALJ may reject the claimant's testimony about the severity of his symptoms "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so."  Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  Factors to be considered in weighing a claimant's credibility include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Ghanim, 763 F.3d at 1163; 20 C.F.R. §§ 404.1529(c), 416.929(c).

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not find "affirmative evidence" of malingering [see generally, AR at 20-23], the ALJ's reasons for rejecting a claimant's credibility must be specific, clear and convincing.  Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)).

1    "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify

2    what testimony is not credible and what evidence undermines the claimant's complaints." Id. at

3    1138 (quoting Lester, 81 F.3d at 834) (internal quotation marks omitted).  The ALJ's findings "must

4    be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's

5    testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding

6    pain." Bunnell, 947 F.2d at 345-46 (citation and internal quotation marks omitted).  A "reviewing

7    court should not be forced to speculate as to the grounds for an adjudicator's rejection of a

8    claimant's allegations of disabling pain." Id. at 346.  As such, an "implicit" finding that a plaintiff's

9    testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per

10   curiam).

11            Here, the ALJ stated that he "[did] not fully credit" plaintiff's testimony and allegations.  [AR

12   at 23.]  The ALJ first noted that the objective medical evidence is inconsistent with plaintiff's

13   testimony of disabling impairment.  [Id.]  The absence of objective medical evidence to support

14   a plaintiff's subjective complaints is a factor that an ALJ can consider in evaluating symptom

15   testimony. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (finding that while medical

16   evidence alone cannot discredit testimony as to pain, it is one factor that the ALJ is permitted to

17   consider).  As previously discussed, the ALJ properly weighed the medical evidence relating to

18   plaintiff's physical impairments and determined that -- with the exception of Dr. Cochran's opinion

19   that plaintiff was capable of only a limited range of light work -- the medical evidence supported

20   an RFC finding of a full range of light work.  [AR at 22-23.]  In support of his credibility finding, the

21   ALJ specifically discussed the fact that after plaintiff's surgery, plaintiff's "musculoskeletal

22   conditions [were] not severe enough to preclude" plaintiff from working.  [AR at 22.] He noted that

23   one month after the surgery, plaintiff was able to get into and out of a chair without difficulty; had

24   full strength and sensation in the lower extremities; evidenced no antalgic gait; was able to stand

25   on his heels and toes; had negative straight leg raising test results; and had negative sciatic

26   stretch test results.  [AR at 22-23.]  He also observed that although plaintiff reported to Dr.

27   Johnson in July 2012 that plaintiff used a cane four to five days per week, he did not bring the

28

1  cane to Dr. Johnson's evaluation.[6]  [AR at 22.]  There also is no evidence that plaintiff brought a

2  cane to the hearing.[7]  [AR at 22-23.]  With respect to plaintiff's alleged mental impairments, plaintiff

3  testified that he had lost interest in hobbies such as riding his motorcycle and taking photographs;

4  becomes angry easily; has problems with authority figures; has a short attention span and

5  problems coping with stress and changes in routine; and has problems with communication.  [AR

6  at 22 (citing AR at 47-48).]  The ALJ also observed that although plaintiff alleges he has difficulty

7  maintaining concentration to manage his finances, there are no records to support such limitations

8  and, despite this alleged difficulty, plaintiff testified that he is able to live alone, shop for groceries,

9  and drive a car.  [AR at 20 (citation omitted).]  Thus, the fact that the objective medical evidence

10  was inconsistent with plaintiff's subjective complaints was a specific, clear and convincing reason

11  for discounting plaintiff's allegations.  However, because this reason by itself cannot be the sole

12  legally sufficient reason for discounting plaintiff's credibility, the ALJ's credibility determination rises

13  or falls with the ALJ's other ground for discrediting plaintiff.

14       Here, the ALJ also noted that plaintiff's admitted daily activities (such as living alone, driving

15  a car, walking to the grocery store and pushing a grocery cart, and safely lifting up to fifteen

16  pounds), "support a light residual functional capacity."  [AR at 23 (citing AR at 37, 38, 42-43).]  An

17  ALJ may rely on a claimant's daily activities to support an adverse credibility determination when

18  those activities: (1) "contradict [claimant's] other testimony"; or (2) "meet the threshold for

19  transferable work skills."  Orn, 495 F.3d at 639.  As a result, a plaintiff's credibility may be

20  discounted if he "is able to spend a substantial part of his . . . day performing household chores

21  or other activities that are transferable to a work setting."  Smolen v. Chater, 80 F.3d 1273, 1284

22  n.7 (9th Cir. 1996).  A claimant, however, need not be "utterly incapacitated to be eligible for

23  benefits . . . and many home activities are not easily transferable to what may be the more

24  grueling environment of the workplace, where it might be impossible to periodically rest or take

25

26  _____

27  [6]   Specifically, plaintiff told Dr. Johnson that he uses the cane "later in the day."  [AR at 466.]

28  [7]   There also is no evidence that any doctor had prescribed a cane for ambulating.

16

1    medication." <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989) (citations omitted); <u>Gallant v.</u>

2    <u>Heckler</u>, 753 F.2d 1450, 1453 (9th Cir. 1984) (an ability to engage in some physical activities is

3    not necessarily inconsistent with a finding of disability). "Even where those activities suggest

4    some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the

5    extent that they contradict claims of a totally debilitating impairment." <u>Molina</u>, 674 F.3d at 1112

6    (citing <u>Turner</u>, 613 F.3d at 1225; <u>Valentine</u>, 574 F.3d at 693).

7        An ALJ must identify "*which* daily activities conflicted with *which* part of [c]laimant's

8    testimony," pointing to *specific facts* in the record to support an adverse credibility finding. <u>Burrell</u>,

9    775 F.3d at 1138. Here, although the ALJ listed a few daily activities that plaintiff testified he is

10    able to do, the ALJ merely found that the activities "support" a light RFC and failed to elaborate

11    at all on how these activities actually conflict with plaintiff's subjective symptom testimony. For

12    instance, the ALJ provided no information on how plaintiff's ability to lift and/or carry ten to fifteen

13    pounds [AR at 38], or to walk *one block* to the grocery store and then push groceries home in a

14    cart [*see* AR at 42-43], or even the fact that plaintiff lives alone, negatively impacts plaintiff's

15    testimony that his back and knee pain create problems for him sitting and standing for any length

16    of time, that he has difficulty with dressing and bathing, that although he lives alone he receives

17    help from friends and others with completing household chores, that he becomes angry easily and

18    has lost interest in hobbies, and that he has problems with concentration and communication. [AR

19    at 36-38, 42-43]. Moreover, although plaintiff testified that he drives a car, he also stated that he

20    does not drive a lot anymore because the car has a manual transmission and using the clutch

21    exacerbates the pain. [AR at 37.] Additionally, these reported daily activities -- at the level plaintiff

22    testified he performed them and without any additional elaboration by the ALJ -- could just as

23    easily support a finding of disability. Accordingly, the ALJ did not provide specific, clear and

24    convincing reasons for discounting plaintiff's subjective symptom testimony.

25        In short, the ALJ's credibility finding was not supported by substantial evidence, nor was

26    it sufficiently specific to permit the Court to conclude that the ALJ did not arbitrarily discredit

27    plaintiff's subjective symptom testimony. Thus, there was error and the error was not harmless.

28

1   **C.**     **MENTAL HEALTH IMPAIRMENTS**

2         Plaintiff contends that the ALJ erred in finding no evidence of mental health impairments

3 and by failing to include relevant mental health evidence in his RFC assessment.  [MSJ at 9-10.]

4 He states that two mental health professionals -- consulting psychiatrist David Bedrin, M.D., and

5 psychologist Cherie Carrera, Psy.D. -- assessed plaintiff's mental health and each determined that

6 plaintiff had a global assessment of functioning ("GAF")[8] score "indicative of moderate to marked

7 mental health impairments."  [Id. (citing AR at 287, 428).]  He also contends that the ALJ's

8 statement that Dr. Bedrin's GAF score of 59[9] "appears to be an unconventional use of the GAF

9 scoring system," was an unfounded opinion.  [Id.]  Plaintiff notes that the ALJ "never even

10 mentioned" the evaluation conducted on August 16, 2011, by Dr. Carrera, who assessed plaintiff

11 with a GAF score of 62.[10]  [MSJ at 10 (citing AR at 428-44).]  He alleges this is significant because

12 Dr. Carrera noted that plaintiff's "psychological reactions to his pain continue to be major

13 contributors to his impaired functioning," and also opined that plaintiff's "mental condition continues

14 to adversely affect his ability to perform job functions."  [Id. (citing AR at 438, 439).]

15         Preliminarily, an ALJ has no obligation to credit or even consider GAF scores in the

16 disability determination.  See 65 Fed. Reg. 50,746, 50,764-65 (Aug. 21, 2000) ("The GAF scale

17 . . . does not have a direct correlation to the severity requirements in [the Commissioner's] mental

18

19

20     [8]     A GAF score is the clinician's judgment of the individual's overall level of functioning.  It is

21 rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations.  Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000) ("DSM-IV").

22     [9]     A GAF score in the range of 51-60 indicates "**Moderate symptoms** (e.g., flat affect and

23 circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g, few friends, conflicts with peers or co-workers)."  DSM-IV 34.

24

25     [10]     Contrary to plaintiff's contention that both Dr. Bedrin and Dr. Carrera assessed GAF scores indicating moderate to marked mental health impairments, Dr. Carrera's assessed GAF score of 62

26 actually indicates "**Some mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social occupational, or school functioning** (e.g., occasional truancy, or theft within the

27 household), **but generally functioning pretty well, has some meaningful interpersonal relationships**."  DSM-IV 34.

28

1  disorders listings."); see also Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002)

2  ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not

3  essential to the RFC's accuracy.").  Additionally, the most recent edition of the DSM "dropped" the

4  GAF scale, citing its "conceptual lack of clarity" and "questionable psychometrics in routine

5  practice."  Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2012) ("DSM-V").

6          The examinations by Dr. Bedrin and Dr. Carrera were both one-time evaluations.  The ALJ

7  thoroughly reviewed Dr. Bedrin's January 16, 2012, findings but never discussed the report

8  prepared by Dr. Carrera for plaintiff's Worker's Compensation claim.  [AR at 20-21.]  The Court

9  notes that Dr. Carrera based her opinions on plaintiff's self-reported history, and on the results of

10  a mental status examination, and an extensive battery of psychological examinations [AR at 432],

11  while Dr. Bedrin based his opinions on a review of medical records that he termed "Medical

12  Source Vendor questions," a mental status examination, and plaintiff's self-reported history.  [AR

13  at 287-92.]

14          An ALJ must consider all of the relevant evidence in the record and may not point to only

15  those portions of the records that bolster his findings.  See, e.g., Holohan v. Massanari, 246 F.3d

16  1195, 1207-08 (holding that an ALJ cannot selectively rely on some entries in plaintiff's records

17  while ignoring others); Aukland, 257 F.3d at 1035 ("[T]he [ALJ]'s decision 'cannot be affirmed

18  simply by isolating a specific quantum of supporting evidence.'") (citing Sousa v. Callahan, 143

19  F.3d 1240, 1243 (9th Cir. 1998)); see also Reddick, 157 F.3d at 722-23 (it is impermissible for the

20  ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts

21  of the testimony and reports"); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The

22  ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are

23  favorable to a finding of nondisability."); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982)

24  ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite

25  conclusion.") (citation omitted).  Here, as noted by the ALJ, although plaintiff reported a history of

26  depression since 1998, has been taking medications for his depression, and reportedly received

27  outpatient psychiatric treatment in the summer of 2011, "there are no records documenting [the

28

1   2011] treatment or other recent specialized mental health treatment." [AR at 20.] Thus,

2   consideration of Dr. Carrera's opinion -- the only other mental health professional who provided

3   an opinion based on an in-person examination of plaintiff -- may have an impact on the ALJ's RFC

4   determination.

5        On remand, the ALJ also shall consider the impact, if any, of Dr. Carrera's opinion on

6   plaintiff's RFC.

7

8   **D.    MEDICATION SIDE EFFECTS**

9        Plaintiff testified at the hearing that his prescription medications -- Vicodin, Hydrocodone,

10  and Gabapentin -- make it very difficult for him to attempt to do his work or do any kind of work.

11  [AR at 34.] He also testified that because of the medications he "certainly couldn't drive," and the

12  medications also make it "a little bit difficult to communicate sometimes," and communicating in

13  his line of work is critical. [AR at 34-35.] He contends that the ALJ's failure to discuss or consider

14  the side effects from plaintiff's medications on plaintiff's ability to work was error. [MSJ at 10-11.]

15       Respondent argues that the ALJ did not need to discuss plaintiff's medications because the

16  medical record does not reflect any side effects. [Cross-MSJ at 9 (citations omitted).] However,

17  the Court is constrained to review only the reasoning asserted by the ALJ, and cannot consider

18  post hoc reasoning by defendant, or even the evidence upon which the ALJ could have relied.

19  Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (noting that a reviewing court "is

20  constrained to review the reasons the ALJ asserts" and finding error where the court affirmed the

21  ALJ's decision "based on evidence that the ALJ did not discuss") (citing Pinto v. Massanari, 249

22  F.3d 840, 847-48 (9th Cir. 2001)); Jonker v. Astrue, 725 F. Supp. 2d 902, 911 n.7 (C.D. Cal.

23  2010).

24       Here, the ALJ never mentioned plaintiff's alleged medication side effects. On remand, the

25  ALJ shall also consider the impact of plaintiff's medication side effects, if any, on his RFC.

26  **E.    HYPOTHETICAL TO THE VE**

27       Plaintiff contends the ALJ failed to provide accurate hypotheticals to the VE because he

28

1   gave no limitations related to plaintiff's pain, or reduced ability to concentrate.  [MSJ at 11-12.]

2   Respondent notes that a determination that a claimant can perform his past relevant work

3   need not be supported by vocational testimony because the burden of proof remains with the

4   claimant.  [Cross-MSJ at 10 (citations omitted).]  Accordingly, because plaintiff did not meet his

5   burden of showing that he was unable to perform his past work, the ALJ was not even required

6   to use a VE.  [Id.] Moreover, the ALJ's hypothetical reflected the ALJ's RFC finding and, therefore,

7   was supported by substantial evidence.  [Id.]

8   On remand, the ALJ shall provide accurate hypotheticals to the VE, if such testimony is

9   warranted, based on the ALJ's RFC determination.

10

11                                                **VI.**

12                          **REMAND FOR FURTHER PROCEEDINGS**

13   The Court has discretion to remand or reverse and award benefits.  McAllister v. Sullivan,

14   888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further

15   proceedings, or where the record has been fully developed, it is appropriate to exercise this

16   discretion to direct an immediate award of benefits.  See Lingenfelter, 504 F.3d at 1041; Benecke

17   v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004).  Where there are outstanding issues that must

18   be resolved before a determination can be made, and it is not clear from the record that the ALJ

19   would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is

20   appropriate.  See Benecke, 379 F.3d at 593-96.

21   Here, there are outstanding issues that must be resolved before a final determination can

22   be made.   In an effort to expedite these proceedings and to avoid any confusion or

23   misunderstanding as to what the Court intends, the Court will set forth the scope of the remand

24   proceedings.  First, because the ALJ failed to provide specific, clear and convincing  reasons for

25   discounting plaintiff's subjective symptom testimony, the ALJ on remand shall reassess plaintiff's

26   subjective allegations and either credit his testimony as true, or provide specific, clear and

27   convincing reasons for discounting or rejecting any testimony.   Second, the ALJ shall also

28

consider the opinion of Dr. Carrera, who assessed plaintiff's mental health.  In assessing the medical opinion evidence of Dr. Carrera and any other doctors who considered plaintiff's mental health impairments, the ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others.  Third, the ALJ shall consider the impact, if any, of plaintiff's medication side effects on plaintiff's RFC.  Finally, if necessary, the ALJ shall reconsider all of plaintiff's limitations in making his RFC determination.  Thereafter, with the assistance of a VE, if warranted, the ALJ shall proceed through step four and, if warranted, step five to determine whether plaintiff can perform his past relevant work or any other work existing in significant numbers in the national economy.

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's MSJ is **granted in part**; (2) defendant's Cross-MSJ is **denied except as discussed above**; (3) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  March 20, 2015

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE